AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)    ☐ Original   ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Central District of California

| | |
|---|---|
| United States of America,<br><br>v.<br><br>RORY CARAWAY,<br><br>Defendant(s) | Case No. 2:24-mj-01502-DUTY |

**FILED**
CLERK, U.S. DISTRICT COURT
3/14/2024
CENTRAL DISTRICT OF CALIFORNIA
BY: _____nne_____ DEPUTY

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of March 12, 2024 in the county of Los Angeles in the Central District of California, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 922(g)(1) | Felon in Possession of a Firearm |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

*/s/ James Yun*
Complainant's signature

James Yun, FBI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: March 14, 2024

/s/ Michael R. Wilner
*Judge's signature*

City and state: Los Angeles, California

Hon. Michael R. Wilner, U.S. Magistrate Judge
*Printed name and title*

AUSA: Daniel H. Weiner (x0813)

**AFFIDAVIT**

I, James Yun, being duly sworn, declare and state as follows:

## I. PURPOSE OF AFFIDAVIT

1. This affidavit is made in support of a criminal complaint against and arrest warrant for Rory CARAWAY ("CARAWAY"), for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), on or about March 12, 2024.

2. This affidavit is also made in support of applications for warrants to search the following items as described more fully in Attachments A-1, A-2, and A-3:

    a. a 2007 Mercedes with VIN WDDNG71XX7A111218, registered to CARAWAY and currently maintained in the custody of the Los Angeles Sheriff's Department ("LASD") in Los Angeles, California (the "SUBJECT VEHICLE");

    b. a Black iPhone SE cellphone with a black case seized from the SUBJECT VEHICLE and currently in the custody of the LASD ("SUBJECT DEVICE 1");

    c. a Black Alcatel cellphone seized from the SUBJECT VEHICLE and currently in the custody of the LASD ("SUBJECT DEVICE 2"); and

    d. 441 E. Plymouth Street, Long Beach, California 90805 (the "SUBJECT RESIDENCE").

3. The requested search warrants seek authorization to seize evidence, fruits, or instrumentalities of violations of 18 U.S.C. § 922(g)(1) (felon in possession of a firearm and ammunition) and 18 U.S.C. § 371 (conspiracy) (the "Subject

Offenses"), as described more fully in Attachment B. Attachments A-1, A-2, A-3, and B are incorporated herein by reference.

4. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested search warrant and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## II. BACKGROUND OF AFFIANT

5. I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been so employed since June 2016. During my tenure with the FBI, I have participated in numerous investigations of violent crime, drug and firearms trafficking organizations, and large-scale street gangs, including criminal enterprise investigations. Through these investigations, I have become familiar with the methods, language, structures, and criminal activities of street gangs and transnational gangs operating in and through this judicial district. I have become familiar with the street and leadership level extortion and collection activities of these gangs. I have become familiar with the types and amount of profit made by narcotics and firearms smugglers and methods, language, and terms that are

2

used to disguise the source and nature of profits from their illegal drug and firearms dealing.

6. Over the course of my career, I have personally interviewed numerous gang members and narcotics and firearms traffickers involved in the criminal enterprise investigations I have worked. I have participated in the debriefing of cooperating defendants, witnesses, confidential human sources, and defendants who had personal knowledge regarding criminal street gang activity, major narcotics and firearms trafficking organizations, and other criminal offenses, including violent crimes.

### III. SUMMARY OF PROBABLE CAUSE

7. On March 12, 2024, LASD deputies stopped CARAWAY as he was driving the SUBJECT VEHICLE after they observed multiple vehicle code violations. During a search of the SUBJECT VEHICLE, deputies found eleven firearms that were later determined to be stolen from a home in La Quinta, California. The La Quinta homeowner later reported that there were 151 firearms stolen from his home. Accordingly, 140 guns are currently believed to be at large. Because CARAWAY has been convicted of multiple felony crimes, he is prohibited from possessing firearms. Accordingly, there is probable cause that CARAWAY committed a violation of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) on March 12, 2024, and that the SUBJECT DEVICES, SUBJECT VEHICLE, and the SUBJECT RESIDENCE contain evidence of the Subject Offenses.

## IV. STATEMENT OF PROBABLE CAUSE

### A. Deputies Stop and Search CARAWAY's Car

8. Based on my review of law enforcement reports, conversations with other law enforcement agents, and my own knowledge of the investigation, I am aware of the following:

   a. On March 12, 2024, LASD deputies initiated a traffic stop on a car later determined to be registered to, and driven by, CARAWAY, i.e., the SUBJECT VEHICLE. The traffic stop was based on violations of California Vehicle Code Sections 26780(a)(1) (impermissible window tinting) and a 5201(c) (failure to keep the vehicle's license plate fully visible).

   b. When deputies approached the car, CARAWAY handed the deputies a California Driver's license that included CARAWAY's name and an address of 441 E. Plymouth Street, Long Beach, California 90805, i.e., the SUBJECT RESIDENCE.

   c. The deputies asked CARAWAY to provide registration for the SUBJECT VEHICLE, to which CARAWAY responded that the car was recently purchased by his girlfriend. In support of that claim, CARAWAY gave the deputies a document entitled "DMV, report of sale-used vehicle," dated August 14, 2023.

   d. Deputies reviewed the "report of sale" document and determined that the document listed a temporary plate number that did not match the temporary plate number affixed to the actual SUBJECT VEHICLE. Moreover, deputies then conducted a records check of the Vehicle Identification Number ("VIN") for the SUBJECT VEHICLE, which showed that the SUBJECT VEHICLE was

4

registered to CARAWAY.  The records check also showed that the VIN was associated with a permanent license plate number that: (i) did not match the temporary license plate affixed to the SUBJECT VEHICLE; and (ii) did not match the temporary license plated listed on the "report of sale" document provided by CARAWAY.

  e. Deputies then asked CARAWAY to step out of the car.  As CARAWAY got out of the car, deputies saw a prescription pill bottle that had no label.  The bottle was on the driver's seat and deputies later determined that it contained over 300 pills.  CARAWAY told the deputies that the pills were for pain but was unable to provide the deputies with his prescription.

  f. Accordingly, based on the information and discrepancies CARAWAY provided about the car, the deputies' training and experience that drug traffickers transport large quantities of pills in unlabeled prescription bottles, and the fact that CARAWAY did not have a prescription for his bottle, deputies searched the SUBJECT VEHICLE for evidence of drug trafficking.

  **B.** **CARAWAY Possessed Eleven Stolen Firearms in the SUBJECT VEHICLE**

 9. Based on my review of law enforcement reports, conversations with other law enforcement agents, and my own knowledge of the investigation, I am aware of the following:

  a. During the search the SUBJECT VEHICLE, law enforcement seized a plastic bag that contained eleven firearms

5

in the back seat directly behind the driver's seat.[1] Law enforcement later determined through records checks that the eleven firearms were registered to an individual in La Quinta, California.

        b.    During a post-arrest <u>Mirandized</u> interview, CARAWAY admitted knowing that the guns were in the SUBJECT VEHICLE and claimed that he was acting on behalf of a non-profit organization called "2nd Call" that, among other things, claims to reduce violence. CARAWAY stated that an individual (whom CARAWAY would not identify) had a cache of firearms stored in an unidentified location (which CARAWAY would not identify). CARAWAY stated that he went to the location where the firearms were stored, grabbed the bag that contained the firearms, placed the bag in his car, and drove away. CARAWAY said that he intended to drive the bag with the firearms to the "2nd Call" office.

        c.    Law enforcement also seized SUBJECT DEVICE 1 and SUBJECT 2 from the SUBJECT VEHICLE.

    **C.**    **The La Quinta Individual Reported that an Additional 140 Firearms were Stolen from his Home**

    10.  Based on my review of law enforcement reports, conversations with other law enforcement agents, and my own knowledge of the investigation, I know that the La Quinta

---

[1] The eleven stolen firearms were: a Sig Sauer 9mm semi-automatic pistol, two Smith and Wesson .44 caliber revolvers, a 9mm semi-automatic pistol, two Smith and Wesson .45 caliber revolvers, a Beretta 9mm semi-automatic pistol, a Sig Sauer .45 caliber semi-automatic pistol (referenced below in the "interstate nexus" section), a Nighthawk .45 caliber semi-automatic pistol, a Beretta .380 semi-automatic pistol, and a Beretta .40 caliber semi-automatic pistol.

individual to whom the 11 firearms recovered from CARAWAY were registered has reported that a total of 151 firearms were stolen from his home. Accordingly, because eleven of those stolen firearms were found in the SUBJECT VEHICLE, I believe there are 140 stolen firearms at large.

### D. CARAWAY is a Convicted Felon

11. Based on my review of CARAWAY's criminal history, I know that he has been convicted of the following felony crimes, each punishable by a term of imprisonment exceeding one year:

    a. On or about February 9, 1988, a violation of California Penal Code Section 211: Robbery, in the Superior Court for the State of California, County of Los Angeles, Case Number A648310; and

    b. On or about July 8, 2008, a violation of California Health and Safety Code Section 11352(a): Transportation/Sale of Controlled Substance, in the Superior Court for the State of California, County of Los Angeles, Case Number NA07409802.

### E. Multiple Indicators Link CARAWAY to the SUBJECT RESIDENCE

12. Based on information provided by United States Postal Service Inspector Anthony Jacobs on March 14, 2024, CARAWAY received a package to the SUBJECT RESIDENCE on March 5, 2024. The package was addressed to CARAWAY.

13. Based on my review of law enforcement reports, conversations with other law enforcement agents, and my own knowledge of the investigation, I am aware that: (i) CARAWAY's

California driver's license lists the SUBJECT RESIDENCE as his address; (ii) the SUBJECT VEHICLE is registered to CARAWAY at the SUBJECT RESIDENCE; and (iii) the SUBJECT RESIDENCE is listed on LASD's booking form for CARAWAY's March 12, 2024 arrest.

**F.  Interstate Nexus**

14. On March 14, 2024, FBI SA Rene Persaud examined one of the firearms found in the SUBJECT VEHICLE.  SA Persaud concluded that the Sig Sauer P245 .45 caliber pistol bearing serial number C010066 was manufactured outside of California.  Accordingly, because the firearm was recovered in California, SA Persaud concluded that the firearm traveled in or affected interstate commerce.

**V.  TRAINING AND EXPERIENCE ON FIREARMS OFFENSES**

15. From my training, personal experience, and the collective experiences related to me by other law enforcement deputies who conduct firearms investigations, I am aware of the following:

    a.  Persons who possess, purchase, or sell firearms generally maintain records of their firearm transactions as items of value and usually keep them in their residence, their vehicles, or in places that are readily accessible, and under their physical control, such in their digital devices.  It has been my experience that prohibited individuals who own firearms illegally will keep the contact information of the individual who is supplying firearms to prohibited individuals or other individuals involved in criminal activities for future purchases or referrals.  Such information is also kept on digital devices.

8

        b.    Many people also keep mementos of their firearms, including digital photographs or recordings of themselves possessing or using firearms on their digital devices.  These photographs and recordings are often shared via social media, text messages, and over text messaging applications.

        c.    Those who illegally possess firearms often sell their firearms and purchase firearms.  Correspondence between persons buying and selling firearms often occurs over phone calls, e-mail, text message, and social media message to and from smartphones, laptops, or other digital devices.  This includes sending photos of the firearm between the seller and the buyer, as well as negotiation of price.  In my experience, individuals who engage in street sales of firearms frequently use phone calls, e-mail, and text messages to communicate with each other regarding firearms that the sell or offer for sale.  In addition, it is common for individuals engaging in the unlawful sale of firearms to have photographs of firearms they or other individuals working with them possess on their cellular phones and other digital devices as they frequently send these photos to each other to boast of their firearms possession and/or to facilitate sales or transfers of firearms.

        d.    Individuals engaged in the illegal purchase or sale of firearms and other contraband often use multiple digital devices.

## VI. TRAINING AND EXPERIENCE ON DIGITAL DEVICES

16.  As used herein, the term "digital device" includes SUBJECT DEVICE 1 and SUBJECT DEVICE 2.

9

17. Based on my training, experience, and information from those involved in the forensic examination of digital devices, I know that the following electronic evidence, inter alia, is often retrievable from digital devices:

   a. Forensic methods may uncover electronic files or remnants of such files months or even years after the files have been downloaded, deleted, or viewed via the Internet. Normally, when a person deletes a file on a computer, the data contained in the file does not disappear; rather, the data remain on the hard drive until overwritten by new data, which may only occur after a long period of time. Similarly, files viewed on the Internet are often automatically downloaded into a temporary directory or cache that are only overwritten as they are replaced with more recently downloaded or viewed content and may also be recoverable months or years later.

   b. Digital devices often contain electronic evidence related to a crime, the device's user, or the existence of evidence in other locations, such as, how the device has been used, what it has been used for, who has used it, and who has been responsible for creating or maintaining records, documents, programs, applications, and materials on the device. That evidence is often stored in logs and other artifacts that are not kept in places where the user stores files, and in places where the user may be unaware of them. For example, recoverable data can include evidence of deleted or edited files; recently used tasks and processes; online nicknames and passwords in the form of configuration data stored by browser, e-mail, and chat

programs; attachment of other devices; times the device was in use; and file creation dates and sequence.

       c.   The absence of data on a digital device may be evidence of how the device was used, what it was used for, and who used it.  For example, showing the absence of certain software on a device may be necessary to rebut a claim that the device was being controlled remotely by such software.

       d.   Digital device users can also attempt to conceal data by using encryption, steganography, or by using misleading filenames and extensions.  Digital devices may also contain "booby traps" that destroy or alter data if certain procedures are not scrupulously followed.  Law enforcement continuously develops and acquires new methods of decryption, even for devices or data that cannot currently be decrypted.

18. Based on my training, experience, and information from those involved in the forensic examination of digital devices, I know that it is not always possible to search devices for data in a short period of time for a number of reasons, including the following:

       a.   Digital data are particularly vulnerable to inadvertent or intentional modification or destruction.  Thus, often a controlled environment with specially trained personnel may be necessary to maintain the integrity of and to conduct a complete and accurate analysis of data on digital devices, which may take substantial time, particularly as to the categories of electronic evidence referenced above.

b.  Digital devices capable of storing multiple gigabytes are now commonplace.  As an example of the amount of data this equates to, one gigabyte can store close to 19,000 average file size (300kb) Word documents, or 614 photos with an average size of 1.5MB.

19. Other than what has been described herein, to my knowledge, the United States has not attempted to obtain this data by other means.

## VII.  CONCLUSION

20. For all of the reasons described above, there is probable cause that: (i) CARAWAY committed a violation of 18 U.S.C. § 922(g)(1), being a felon in possession of a firearm, on or about March 12, 2024; and (ii) that items to be seized described in Attachment B will be found in a search of the SUBJECT VEHICLE, SUBJECT DEVICE 1, SUBJECT DEVICE 2, and the SUBJECT RESIDENCE, as described in Attachments A-1, A-2, and A-3.

Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this 14th day of
March, 2024.

_____
HON. MICHAEL R. WILNER
UNITED STATES MAGISTRATE JUDGE

12